UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

JEFFREY MCCOMSEY,                    )
                                     )
        Plaintiff,                   )
                                     )
VS.                                  )        No. 20-1095-JDT-cgc
                                     )
MYRON STOKES, ET AL.,                )
                                     )
        Defendants.                  )

---

ORDER TO MODIFY THE DOCKET,
DENYING MOTION TO APPOINT COUNSEL,
GRANTING MOTION TO AMEND,
PARTIALLY DISMISSING CASE, AND DIRECTING
THAT PROCESS BE ISSUED AND SERVED ON DEFENDANT ROBERTSON

---

On April 27, 2020, Plaintiff Jeffrey McComsey, who is incarcerated at the Whiteville Correctional Facility (WCF) in Whiteville, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 and a motion to proceed *in forma pauperis*. (ECF Nos. 1 & 2.) The Court subsequently granted leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(a)-(b). (ECF No. 10.) McComsey also has filed a motion to amend the complaint to name CoreCivic as an additional defendant, (ECF No. 11); that motion is GRANTED. The Clerk shall record the Defendants as Myron Stokes, a physician at the WCF; Tazma Robertson, a nurse at the WCF; Tony Parker, Commissioner of the Tennessee Department of Correction (TDOC); Samuel Rogers, WCF Warden; and CoreCivic, a

private company that manages the WCF.[1]  The individual Defendants are sued in both their official and individual capacities.

Though McComsey demanded a jury trial in the complaint, (*see* ECF No. 1 at PageID 8), the Clerk inadvertently did not record that jury demand on the docket. McComsey filed a second jury demand on May 4, 2020.  (ECF No. 5.)  The Clerk is directed to MODIFY the docket to show that McComsey has demanded a jury in this case.

McComsey also filed a motion for appointment of counsel.  (ECF No. 9.)  Pursuant to 28 U.S.C. § 1915(e)(1), the "court may request an attorney to represent any person unable to afford counsel."  However, "[t]he appointment of counsel in a civil proceeding is not a constitutional right." *Lanier v. Bryant*, 332 F.3d 999, 1006 (6th Cir. 2003); *see also Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002) ("[T]he plaintiffs were not entitled to have counsel appointed because this is a civil lawsuit."); *Lavado v. Keohane*, 992 F.2d 601, 605-06 (6th Cir. 1993) (no constitutional right to counsel in a civil case); *Farmer v. Haas*, 990 F.2d 319, 323 (7th Cir. 1993) ("There is no constitutional or . . . statutory right to counsel in federal civil cases . . . .").  Appointment of counsel is "a privilege that is justified only by exceptional circumstances." *Lavado*, 992 F.2d at 606 (internal quotation marks and citation omitted).

---

[1] *See* www.tn.gov/content/tn/correction/sp/state-prison-list/whiteville-correctional-facility.html (Whiteville Correctional Facility (WCFA) is a time-building prison with a security designation of medium.  WCFA is managed by CoreCivic, a private corrections management firm.").

"In determining whether 'exceptional circumstances' exist, courts have examined the type of case and the abilities of the plaintiff to represent himself. This generally involves a determination of the complexity of the factual and legal issues involved." *Id.* at 606 (internal quotation marks and citations omitted). Appointment of counsel is not appropriate when a *pro se* litigant's claims are frivolous or when his chances of success are extremely slim. *Id.* (citing *Mars v. Hanberry*, 752 F.2d 254, 256 (6th Cir. 1985)); *see also Cleary v. Mukasey*, 307 F. App'x 963, 965 (6th Cir. 2009) (same). "[I]n contrast to criminal defendants, civil litigants unable to afford counsel cannot ordinarily" have counsel appointed unless "there is a risk of loss of liberty, as in mental commitment or juvenile delinquency proceedings." *Iannaccone v. Law*, 142 F.3d 553, 556 (2d Cir. 1998), *cited in Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002).

The only reasons McComsey offers to justify appointment of counsel is that he is indigent and incarcerated and that an attorney would be better able to present evidence and cross-examine witnesses if this case goes to trial. None of those things, either separately or combined, amounts to exceptional circumstances warranting the appointment of counsel in this case. The motion to appoint counsel is DENIED.

McComsey alleges in his complaint that in August of 2019 he submitted a sick call request to see a doctor about swelling in his left leg and foot. (ECF No. 1 at PageID 4.) On August 28, 2019, he saw Nurse Drummond, who is not named as a defendant, and Nurse Drummond referred him to see the doctor, Defendant Stokes, the next day. (*Id.*) However, McComsey did not see Dr. Stokes the next day; instead, he saw Defendant Nurse

Robertson on August 30, 2019, and complained that his leg was swollen and he was in severe pain.  (*Id.*)

McComsey alleges he was taken to see Dr. Hayden, an outside medical provider in Jackson, Tennessee, on September 1, 2019.  (*Id.*)  Dr. Hayden ordered an ultrasound and allegedly determined that McComsey had a blood clot in his left leg.  (*Id.*)  The next day, McComsey was issued a wheelchair at the WCF because of his pain.  However, on September 30, 2019, Defendant Robertson allegedly took away McComsey's wheelchair, "saying basically he needs to suffer through the pain."  (*Id.*)  McComsey further alleges that as of April 11, 2020, his left leg was still swollen and painful but he was not being allowed to have a wheelchair.  (*Id.* at PageID 5.)  Thus he asserts he is forced to walk on his left leg and foot, which allegedly causes him "severe pain and anguish."  (*Id.*)  McComsey asserts the denial of a wheelchair constitutes cruel and unusual punishment and deliberate indifference.  (*Id.* at PageID 5, 6.)  He seeks declaratory and injunctive relief and both compensatory and punitive damages.  (*Id.* at PageID 8-9.)[2]

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

> (1)     is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

---

[2] At the end of the factual allegations in the complaint, McComsey states:  "Please see copy of time line as well as Grievance's [sic] attached."  (*Id.* at PageID 5.)  However, there were no exhibits of any kind accompanying the complaint when it was received and docketed by the Clerk.

(2)     seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied.  *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010).  The Court accepts the complaint's "well-pleaded" factual allegations as true and then determines whether the allegations "plausibly suggest an entitlement to relief.'"  *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681).  Conclusory allegations "are not entitled to the assumption of truth," and legal conclusions "must be supported by factual allegations."  *Iqbal*, 556 U.S. at 679.  Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P.  8(a)(2), Rule 8 nevertheless requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief."  *Twombly*, 550 U.S. at 555 n.3.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed."  *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)).  *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create

a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

McComsey filed his complaint pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To state a claim under § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

McComsey does not state a valid claim against any of the Defendants in their official capacities. With regard to Defendant Parker, the TDOC Commissioner, any official capacity claims against him are treated as claims against the State of Tennessee. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). McComsey, however, does not state a valid claim against the State of Tennessee. The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment has been construed to prohibit citizens from suing their own states in federal court. *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 472 (1987); *Pennhurst State Sch. & Hosp. v. Halderman*, 465

U.S. 89, 100 (1984); *see also Va. Office for Protection & Advocacy v. Stewart*, 563 U.S. 247, 253-54 (2011) ("A State may waive its sovereign immunity at its pleasure, and in some circumstances Congress may abrogate it by appropriate legislation.   But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." (citations omitted)).   Tennessee has not waived its sovereign immunity and therefore may not be sued for damages.   *See* Tenn. Code Ann. § 20-13-102(a).   Moreover, a state is not a person within the meaning of 42 U.S.C. § 1983.   *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002); *Will*, 491 U.S. at 71.

The Supreme Court has clarified, however, that "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Will*, 491 U.S. at 71 n.10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985), and *Ex Parte Young*, 209 U.S. 123, 159-60 (1908)); *see also Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 381 (6th Cir. 1993) ("[T]he [eleventh] amendment does not preclude actions against state officials sued in their official capacity for prospective injunctive or declaratory relief." (citing *Ex Parte Young*, 209 U.S. 123)).

To proceed with official-capacity claims for prospective injunctive relief against Defendant Parker, McComsey must allege that the State of Tennessee was responsible for the violation of his constitutional rights because of a practiced custom or policy.   *Kentucky v. Graham*, 473 U.S. 159, 16-67 (1985); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).   The Sixth Circuit has held that to establish the requisite causal link between

constitutional violation and policy, a plaintiff must "identify the policy, connect the policy to the [entity] itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993). The custom or policy must be "the moving force" behind the deprivation of the plaintiff's rights. *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 606-07 (6th Cir. 2007) (citing *Monell*, 436 U.S. at 694). Because McComsey does not allege that a State policy was the "moving force" behind the alleged violation of his rights, he does not state a claim against Defendant Parker in his official capacity.

McComsey's official-capacity claims against the WCF Defendants are treated as claims against their employer, Defendant CoreCivic. However, McComsey also fails to state a claim against CoreCivic. "A private corporation that performs the traditional state function of operating a prison acts under color of state law for purposes of § 1983." *Thomas v. Coble*, 55 F. App'x 748, 748 (6th Cir. 2003) (citing *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996)). The Sixth Circuit has applied the standards for assessing municipal liability to claims against private corporations that operate prisons or that provide medical care or food services to prisoners. *Id.* at 748-49; *Street*, 102 F.3d at 817-18; *Johnson v. Corr. Corp. of Am.*, 26 F. App'x 386, 388 (6th Cir. 2001); *see also Eads v. State of Tenn.*, No. 1:18-cv-00042, 2018 WL 4283030, at *9 (M.D. Tenn. Sept. 7, 2018). CoreCivic "cannot be held liable under a theory of respondeat superior." *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011). To prevail on a § 1983 claim against CoreCivic, McComsey again must show that the alleged deprivation of his rights was due to a policy or custom of the company. *Id.* McComsey, however, does not allege

that his injuries are the result of an unconstitutional policy or custom of CoreCivic.  He therefore fails to state a claim against CoreCivic or against the WCF Defendants in their official capacities.

McComsey also does not state a valid claim against Defendants Parker or Rogers in their individual capacities.  The complaint alleges no wrongdoing against these Defendants, and when a complaint fails to allege any action by a Defendant, it necessarily fails to "state a claim for relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  Instead, it is evident that McComsey sues Parker and Rogers only because of their respective positions as the TDOC Commissioner and WCF Warden.  However, under § 1983, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."  *Iqbal*, 556 U.S. at 676; *see also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).  Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.

> There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it.  At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates.

*Bellamy*, 729 F.2d at 421 (citation omitted).  A supervisory official who is aware of the unconstitutional conduct of his subordinates but fails to act generally cannot be held liable in his individual capacity.  *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006).  In addition, a failure to take corrective action in response to an inmate grievance or complaint does not supply the

necessary personal involvement for § 1983 liability.  *See George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional]  violation.  A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not.").  McComsey does not allege that either Parker or Rogers, through their own actions, violated his constitutional rights.

With regard to McComsey's individual-capacity claims against Defendants Stokes and Robertson, the claims arise under the Eighth Amendment, which prohibits cruel and unusual punishments.  *See generally Wilson v. Seiter*, 501 U.S. 294, 297 (1991).  Under *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment."  To state a cognizable claim, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.  It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment."  *Id.* at 106.

An Eighth Amendment claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson*, 501 U.S. at 298.  The objective component of an Eighth Amendment claim based on a lack of medical care requires that a prisoner have a serious medical need.  *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004); *Brooks v. Celeste*, 39 F.3d 125,

128 (6th Cir. 1994). For purposes of this order, the Court assumes that McComsey's alleged blood clot was a serious medical need.

To establish the subjective component of an Eighth Amendment violation, a prisoner must demonstrate that the defendant acted with the requisite intent, that is, that he had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *see also Wilson*, 501 U.S. at 302-03. The plaintiff must show that the defendants acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 303; *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009); *Woods v. Lecureux*, 110 F.3d 1215,1222 (6th Cir. 1997). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. A defendant cannot be found liable under the Eighth Amendment unless he subjectively knows of an excessive risk of harm to an inmate's health or safety and disregards that risk. *Id.* at 837.

The only allegation in the complaint concerning Defendant Stokes is that on August 28, 2019, Nurse Drummond referred McComsey to see Stokes the next day but that McComsey did not actually see Stokes. Instead, he saw Defendant Robertson on August 30th. McComsey does not allege that Stokes at that time knew of an excessive risk to McComsey's health and yet intentionally refused to see him. McComsey also does not allege that Stokes ever examined him or provided inadequate treatment for the blood clot on any other occasion. Thus, McComsey has not stated an Eighth Amendment claim against Defendant Stokes.

Construing the allegations against Defendant Robertson liberally, McComsey alleges that Robertson examined him on August 30th, at which time he complained of severe pain in his leg.  After McComsey allegedly was diagnosed with a blood clot and was given a wheelchair, Robertson allegedly took away the wheelchair even though she knew McComsey still had severe pain in his leg and foot and could not walk without difficulty.  The Court finds these allegations state a plausible, albeit minimal, Eighth Amendment claim of deliberate indifference to a serious medical need.

In conclusion, with the exception of his individual-capacity claim against Defendant Robertson, all of McComsey's claims are DISMISSED for failure to state a claim on which relief may be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). McComsey's Eighth Amendment claim of deliberate indifference against Defendant Robertson will proceed.

It is ORDERED that the Clerk shall issue process for Defendant Nurse Tazma Robertson and deliver that process to the U.S. Marshal for service. Service shall be made on Defendant Robertson pursuant to Federal Rule of Civil Procedure 4(e) and Tennessee Rules of Civil Procedure 4.04(1) and (10) by registered or certified mail or personally if mail service is not effective.  All costs of service shall by advanced by the United States.

It is further ORDERED that McComsey shall serve a copy of every subsequent document he files in this case on the attorneys for Defendant Robertson or on Defendant Robertson personally if she is unrepresented.  McComsey shall make a certificate of service

on every document he files.  McComsey shall familiarize himself with the Federal Rules of Civil Procedure and this Court's Local Rules.[3]

McComsey is reminded that he must promptly notify the Clerk of any change of address or extended absence.  Failure to comply with these requirements, or any other order of the Court, may result in the dismissal of this case without further notice.

IT IS SO ORDERED.

 s/ **James D. Todd**_____
JAMES D. TODD
UNITED STATES DISTRICT JUDGE

---

[3] A copy of the Local Rules may be obtained from the Clerk or on the Court's website at https://www.tnwd.uscourts.gov/pdf/content/LocalRules.pdf.